Joseph P. CONNORS, Sr., Donald E. Pierce, Jr., William Miller, William B. Jordan, and Paul R. Dean, as Trustees of the United Mine Workers of America 1950 Pension Trust, 1950 Benefit Plan and Trust, 1974 Pension Trust, and the 1974 Benefit Plan and Trust, Appellants in No. 88–3217,

v.

CONSOLIDATION COAL COMPANY.

Appeal of CONSOLIDATION COAL COMPANY, a corporation.

Nos. 88–3183, 88–3217.

United States Court of Appeals, Third Circuit.

Argued Sept. 30, 1988.
Decided Jan. 24, 1989.

**600**

Anthony J. Polito (argued), Polito and Smock, P.C., Pittsburgh, Pa., for appellee-cross-appellants Consolidation Coal Co.

Margaret M. Topps, David C. Bernabucci, Kenneth M. Johnson, United Mine Workers of America Health & Retirement Funds, Office of Gen. Counsel, Washington, D.C., Jack W. Plowman, Stephanie G. Spaulding, Plowman and Spiegel, Pittsburgh, Pa., Abraham C. Reich (argued), Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for appellants-cross-appellee.

Before: GIBBONS, Chief Judge, and SCIRICA, Circuit Judges and FARNAN, District Judge [*].

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

These are cross-appeals from the district court's grant of summary judgment. Plaintiffs, trustees of the United Mine Workers of America Pension Plans and Trusts, ("Trustees") brought suit under the Labor Management Relations Act, 29 U.S.C. § 185 (1982) and the Employee Re-

tirement Income Securities Act, 29 U.S.C. § 1132(e) (1982), alleging that the defendant, Consolidation Coal Company ("Consol"), underpaid employee benefit trust funds for certain hours worked by Consol employees in contravention of the National Bituminous Wage Agreements of 1978, 1981 and 1984. Consol appeals the decision requiring it to make contributions to the employee benefit trust funds for "worked lunch hours." The Trustees appeal the decision relieving Consol from making contributions for "grievance hours" and "physical challenge hours." The Trustees also appeal the district court's decision to apply the three-year statute of limitations set forth in Pennsylvania's Wage Payment and Collection Law, 43 Pa.Stat.Ann. § 260.9a(g)(Purdon Supp.1988). We will affirm the judgment of the district court on all issues.

## I.

The Bituminous Coal Operators Association ("BCOA"), a multi-employer bargaining group of which Consol is a member, and the United Mine Workers of America ("UMWA") are signatories to successive wage agreements which require a signatory operator to make contributions on behalf of its classified employees to various employee benefit trust funds. Plaintiffs are trustees of four of these employee benefit trust funds[1] that provide pensions and health benefits to miners.

Article XX(d)(1) of the National Bituminous Coal Wage Agreement of 1984[2] ("the wage agreement") requires employers to contribute to the trust funds an amount "based on cents per hour worked by each of the Employer's Employees who perform classified work under this Agreement."

---

[*] The Honorable Joseph J. Farnan, Jr., United States District Judge for the District of Delaware, sitting by designation.

[1] The 1950 Pension Plan and Trust and the 1950 Benefit Plan and Trust provide, respectively, pensions and health benefits to miners who retired before 1976. The 1974 Pension Plan and Trust and the 1974 Benefit Plan and Trust provide, respectively, pensions to miners who retired after 1975 and health benefits to certain pensioners who receive retirement benefits from the 1974 Pension Trust.

[2] Plaintiffs contest Consol's failure to make contributions to the trust funds under the 1978, 1981 and 1984 National Bituminous Coal Wage Agreements. The provisions at issue in this case are identical in all three wage agreements, and therefore reference will be made only to the 1984 Wage Agreement.

App. at 98. Article XX(d)(vii) of the wage agreement further provides that

[h]ours of work for purposes of Employer contributions to the plans and trusts described in this Article shall include all hours worked, or fractions thereof, by Employees in a classified job covered by this Agreement. Hours actually worked for which a premium pay of any type is provided shall be treated for purposes of Employer contributions to the Trusts as though worked on a straight-time basis. Reporting for hours not actually worked shall not be included for the purpose of making Employer contributions to the Trust.

App. at 99. Moreover, Article IV(b)(1) of the wage agreement defines a work day as follows:

For all inside Employees a work day of eight (8) hours from portal-to-portal, which means collar-to-collar or bank-to-bank, is established including a staggered thirty (30) minutes for lunch, and without any intermission or suspension of operation throughout the day. For inside day workers these eight (8) hours per day shall be paid for at straight time rate. Overtime beyond eight (8) hours per day and forty (40) hours per week shall be paid for at time and one-half ...

App. at 88.

To ensure accurate reporting of hours credited to employees for contribution to the trust funds, the United Mine Workers issued an instruction booklet to signatory employers as a guide. Entitled "Instructions for Reporting Hours," the booklet instructs employers on how to fill in the reporting form, and divides reported hours into four categories. The first category includes hours for which contribution is required and covers all hours worked (and fractions thereof) and shift time paid for, including lunch hours and time spent traveling portal-to-portal. The remaining categories include those hours paid for by the employer but during which the employee performs no work (such as vacation, holi-

day, jury duty, bereavement, illness, and reporting pay), those hours not paid for by the employer (such as sickness and accident hours), and contractual union committee hours.

In 1983, the Trustees conducted an audit of Consol's payroll for the periods between March 27, 1978 and March 26, 1981 and between June 7, 1981 and December 31, 1982. The audit resulted in a finding that Consol had not made contributions to the trust funds for worked lunch hours, grievance hours, and physical challenge hours.[3] On June 19, 1986, the Trustees commenced this action to enjoin Consol from violating the terms of the wage agreements by failing to contribute to the trust funds for worked lunch hours, grievance hours, and physical challenge hours, and to recover money owed the trust funds. Both parties filed motions for summary judgment.

The Magistrate's Report and Recommendation, adopted as the opinion of the District Court, granted the Trustees summary judgment on contribution for worked lunch periods. The court found that under the wage agreement, employees are entitled to one-half hour of lunch break every day, but that with some frequency, workers are asked to work through the lunch period. Until 1982, Consol had been making contributions to the trust funds for these worked lunch hours, but in October 1982 claimed a $260,911.65 credit for past contributions for worked lunch periods. The court concluded that contribution was required for worked lunch hours because the wage agreements contemplated contribution for actual productive work time and additional productive time is secured when an employee works during his lunch period.

The court also granted Consol summary judgment on contribution for grievance and physical challenge hours. The court found that the rate of contribution to the trust funds is dependent on productivity. Wages recovered in the form of backpay, however, are not compensation for productive work

---

**3.** Grievance hours are those for which an employee has been granted a backpay award as a result of a grievance resolution in his favor. Physical challenge hours are those for which an employee has been granted a backpay award because the employer improperly challenged an employee's ability to work.

time. Consequently, the court did not require contribution for unproductive hours for which an employee was improperly denied but ultimately given compensation.

Finally, the court determined that the three year statute of limitations of the Pennsylvania Wage Payment and Collection Law, 43 Pa.Stat.Ann. 260.9a(g), applies to the Trustee's claims. Finding that neither the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187 (1982), nor the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982), contained statutes of limitations, the court looked to state statutes of limitations. The court applied Pennsylvania's three year statute of limitations because it had not been preempted by ERISA and because the Pennsylvania's Wage Payment and Collection Law was "most closely analogous" to ERISA.

We have plenary review over the grant of summary judgment. *Solomon v. Klein*, 770 F.2d 352, 353 (3d Cir.1985); *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 330 (3d Cir. 1984).

## II.

### A. Lunch Hours

■ Consol contends that it is not required to make contributions to the trust funds for worked lunch hours because the lunch period is considered a half hour worked, for which Consol already makes a contribution. According to Consol, requiring contribution for eight and one-half hours of work for an eight hour work day when an employee works through lunch gives the trust fund a one-half hour windfall. Consol maintains that it should make contributions based on eight hours of work

whether or not the employee works through his lunch period.

Consol's argument fails to account for the miner's contractual entitlement to a half-hour lunch period during which he is not required to work. Article VI(b)(1) of the wage agreement defines an eight-hour work day to include a "staggered thirty (30) minutes for lunch." When an employee works through his lunch hour, he provides his employer with an extra half hour of productivity to which the employer is not entitled under the wage agreement and for which the employer must compensate at the premium rate. Indeed, when the employee works through the lunch period, he is compensated in the same manner as if he had worked an additional one-half hour at the end of the work day. Similarly, for purposes of contribution, a worked lunch period should require contribution in the same manner as if the employee had worked an additional one-half hour of overtime at the end of his work day. Thus, when an employer requests a miner to forego his contractual right to a lunch period, the employer cannot expect to gain the extra one-half hour of employee productivity without the concurrent responsibility to contribute to that employee's pension and health funds.

This outcome is consonant with the provisions of the wage agreements and with industry practice.[4] Article XX(d)(vii) of the wage agreement requires the employer to make contributions for all hours *worked* in a classified job. *See* app. at 99 (emphasis added). Contribution to the trust funds is therefore linked to productivity. Furthermore, the wage agreement exempts the employer from making contributions for reporting hours "not actually worked." App. at 99. Moreover, the Trustee's instruction booklet on reporting hours for

---

**4.** *See also Combs v. North River Energy Corp.,* No. CV 81–P–1164–W (N.D.Ala. December 27, 1982), where the court held that the BCOA Wage Agreements required contribution to the employee benefit trusts for worked lunch periods. The court posed two hypotheticals, both of which the parties had agreed would require contribution: (1) when an employee stays in the mine and works an extra thirty minutes at the end of his regular eight-hour day, and (2) when an employee works in the mine during the lunch period and then takes his thirty minute lunch break at the end of an eight hour day. Slip op. at 3. In light of the parties' agreement that under these hypotheticals the wage agreements would require contribution, the court determined that it owuld be anomalous to decide that contribution was not required when the employee worked through his contractually mandated lunch period. *Id.*

which a contribution must be made covers productive time and paid shift time, including portal-to-portal and lunch time.[5] Conversely, under the instruction booklet, those hours for which the employee is paid, but during which he is unproductive, require no contribution. These instructions support the view that, in general, contribution is required for productive hours, with an exception for nonproductive shift time, including portal-to-portal and lunch time. When an employee works through his lunch period and thus spends an additional half-hour of productive time under his employer's control, he is entitled to an additional contribution to his benefits plan under the wage agreement.

Requiring Consol's contribution to the trust funds for worked lunch hours is also consistent with industry practice. The Trustees regularly conduct audits of the books and records of the signatory employers to verify their compliance with the contribution requirements of the wage agreements. The auditors test for, among other things, whether the employers are making the proper contributions for worked lunch hours. A review of the trust funds' most recent audits of the top forty contributors showed that in only three instances had the auditors identified underpayment because of improper reporting of worked lunch hours. These audits demonstrate that Consol's unilateral decision to refuse contribution for worked lunch hours contradicts industry practice. It is well established that industry or shop practices form part of the collective bargaining agreement. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

**B. Grievance Hours and Physical Challenge Hours**

■ The Trustees also claim that Consol should make contributions for backpay resulting from the resolution of grievances or arising from the employer's improper chal-

lenge of the employee's physical ability to perform his regular duties. In both situations, the employee is entitled to compensation for work time lost due to the employer's improper conduct. In neither situation, however, has the employee actually worked for the backpay awarded him. Thus, requiring contribution in these situations would uncouple the link between productivity and contribution to the trust funds that underlies the contribution provisions of the wage agreement.

Indeed, Article XX(d)(vii) of the wage agreement contemplates contribution for "hours worked, or fractions thereof." App. at 99. Moreover, the agreement specifically provides an exclusion for "hours not actually worked." *Id.* Both provisions illustrate the bargainers' intent to require contributions to the trust funds only for productive hours, with an exception for the lunch period and portal-to-portal time. This interpretation is bolstered by the instructions booklet written by the Trustees which does not require reporting for contribution purposes of any hours "during which no classified work is performed." App. at 170.

### III.

■ Although ERISA preempts state law as it may relate to an employee benefit plan described in the Act, 29 U.S.C. § 1144(a), it does not contain a statute of limitations. Therefore, we must look to the most closely analogous state statute of limitations. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158–60, 103 S.Ct. 2281, 2287–89, 76 L.Ed.2d 476 (1983) (when no federal statute of limitations exists that is expressly applicable to suit, Congress intended courts to apply most closely analogous state statute of limitations).

■ The district court applied the three-year statute of limitations contained in Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa.Stat.Ann. § 260.9a(g). *See Teamsters Pension Trust*

---

**5.** This productivity/nonproductivity interpretation is also consistent with the history of these industry-wide wage agreements. The 1974 Wage Agreement provided that BCOA employers contribute to the funds based upon (1) the number of tons of coal produced, procured, or acquired, and (2) the number of hours worked by classified employees.

*Fund v. John Tinney Delivery Service, Inc.* 732 F.2d 319, 322–23 (3d Cir.1984) (WPCL statute of limitations applied to cause of action brought under LMRA, ERISA, and WPCL; WPCL cause of action "mirrors" federal cause of action, making application of its statute of limitations appropriate). The trustees argue, however, that application of the WPCL statute of limitations is barred by ERISA's preemption provision.

The WPCL statute of limitations, however, does not "relate to" an employee benefit plan within the meaning of ERISA's preemption provision and thus is not preempted. Indeed, we explicitly stated in *McMahon v. McDowell*, 794 F.2d 100 (3d Cir.), *cert. denied*, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986), that state law conflicted with ERISA and thus was preempted by the federal statute only "insofar as [state law] authorize[d] the recovery" of pension contributions and fringe benefits, items that plainly "relate to" employer pension funds covered by ERISA. *Id.* at 106. Pennsylvania's Wage Payment and Collection Law's statute of limitations, however, does not authorize liability, and thus does not conflict with the ERISA provisions. The district court therefore properly followed *DelCostello* in applying Pennsylvania's most closely analogous statute of limitations.

Each party shall bear its own costs.